UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CHUHAR CHUHAR, individually and )
dba Starlite Inn, LLC,            )
                                  )
       Plaintiffs        )
                                  )
   v.                         )  CIVIL NO. 2:09 cv 332
                                  )
AMCO INSURANCE COMPANY; ALLIED    )
INSURANCE,                        )
                                  )
       Defendants        )

## OPINION AND ORDER

This matter is before the court on the Motion to Substitute Itself as Party Plaintiff [DE 34], filed by non-party Centier Bank on September 29, 2011. For the following reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

### Background

Merrillville Motel Associates, L.P., ("MMA") owned a hotel located at 6201 Opportunity Lane, Merrillville, Indiana. On April 26, 2000, MMA executed a mortgage and promissory note payable to Centier Bank. The note was secured by a mortgage granting a security interest in the motel and a commercial security agreement pledging all intangible and tangible personal property of MMA. The security agreement was perfected by filing a UCC financing statement with the Indiana Secretary of State.

On October 24, 2006, MMA entered into a Real Estate Installment Contract to sell the motel to the plaintiff, Chuhar Chuhar.

MMA was to continue to make its monthly payments of principal and interest under the mortgage and promissory note to Centier during the term of the installment contract. Under the agreement, Chuhar was required to "[m]aintain property insurance on the Property in an amount not less than the balance of the purchase price . . . policies to name Seller and Buyer as their respective interests may appear . . ." Chuhar secured property insurance with AMCO Insurance Company and Allied Insurance. The insurance policy was for the term of October 23, 2006, through October 23, 2007, and covered bodily injury, property damage, and business interruption claims.

A hail, wind, and thunderstorm occurred on August 15, 2007, causing significant damage to the motel and interrupting business operations. Chuhar filed a claim for the property damage and business interruption using the services of a third-party administrator and a general contractor. Some of the repairs to the motel have been completed and were paid by AMCO, however, the remainder of the property damage and business interruption claims remain outstanding. On August 25, 2009, Chuhar filed the instant law suit against AMCO, alleging breach of contract and bad faith based on AMCO's failure to adjust the insurance policy claims he filed.

MMA continued to make the principal and interest payments on the note to Centier until December 2009. A balance of $2,203,798.66 remained plus a per diem of $704.8117. The failure to pay constituted a default under the terms of the loan agreement, prompting Centier to commence foreclosure litigation in the Lake County Superior Court. Judge Jeffery Dywan issued a series of orders, concluding that Centier had first priority in the motel, including priority over the mechanic's liens by the contractors who began to repair the motel. Judge Dywan entered summary judgment to foreclose on Centier's mortgage and to establish liability as to MMA. On August 18, 2010, judgment of foreclosure and entry of a money judgment in the amount of $2,264,412.47 plus $794.8117 per diem after March 5, 2010, was entered in favor of Centier.

After the present litigation commenced, Chuhar relocated and his current whereabouts are unknown. Centier represents that it has taken efforts to find Chuhar but was unsuccessful. The defendants served interrogatories and requests for production on Centier and requested to depose Chuhar. Centier responded to the interrogatories and requests for production, which were signed by an authorized representative of Centier. The defendants objected that the signatory was not Chuhar, and the court ordered Chuhar to sign the discovery responses under oath and to provide the

responses to the defendants within ten days. Centier's counsel indicated that it would be unable to comply with the order, and on September 23, 2011, counsel for the defendants informed Centier's counsel that it would be filing a motion to dismiss. Centier now moves to be substituted for Chuhar as the plaintiff.

Discussion

Federal Rule of Civil Procedure 25 provides for the substitution of parties if a party has died, become incompetent, has transferred his interest, or if a public officer has been succeeded by someone else. Rule 25 is inapplicable if a change of parties is desired for some other reason than the four circumstances the rule sets forth. Wright and Miller, 7A *Federal Practice and Procedure* §1951 (1972). "Rule 25 does not substantively determine what actions survive the transfer of an interest; rather, it provides substitution procedures for an action that does survive." **ELCA Enterprises, Inc. v. Sisco Equipment Rental & Sales, Inc.**, 53 F.3d 186, 191 (8th Cir. 1995); **Hilbrands v. Far East Trading Co., Inc.**, 509 F.2d 1321, 1323 (9th Cir. 1975). "The rule is 'designed to allow an action to continue unabated when an interest in a lawsuit changes hands,' rather than requiring the initiation of an entirely new lawsuit." **ELCA,** 53 F.3d at 191 (*citing* **General Battery Corp. v. Globe-Union, Inc.**, 100 F.R.D. 258, 261 (D. Del. 1982)). In a diversity

4

action, the court generally will look to state law to determine whether the claim survives after transfer. 7C *Federal Practice and Procedure* §1952.

With respect to transferring interest of a claim, Rule 25 states that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." It is within the discretion of the court to substitute a party if it finds that allowing the substitution would facilitate the conduct of the litigation. 7C *Federal Practice and Procedure* §1958. When the debtor abandons his interest in the action, it is proper and necessary to substitute the creditor so that it can protect its interest. **Pacamor Bearings, Inc. v. Minebea Co.**, 892 F.Supp. 347, 360 (D.N.H. 1995); 7C *Federal Practice and Procedure* §1958.

Centier insists that Chuhar transferred his interest in all three of his claims and requests to be substituted as the real party in interest. The defendants disagree that Chuhar assigned his claims for bad faith and breach of the business interruption provision of the insurance policy and argue that the 18 month delay in requesting substitution is fatal to Centier's motion to be substituted as plaintiff for the breach of the property damage claim.

The defendants first dispute whether a bad faith claim may be assigned to a third-party, arguing that the duty to deal in good faith does not extend to third-parties, and therefore cannot be pursued by a third-party. A duty to deal in good faith is implied in all insurance contracts. *Brady v. Allstate Indemnity Co.*, 788 N.E.2d 916, 920 (Ind. App. 2003). However, this duty is limited to the interactions between the insurance company and the insured and does not extend to the insurer's dealings with third parties. *Brady*, 788 N.E.2d at 920 (*citing Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002)). Although a party may benefit from an insurance policy, the party is not owed a duty of good faith unless the duty is created by the agreement. *Donald v. Liberty Mutual Insurance Co.*, 18 F.3d 474, 480 (7th Cir. 1994); *Brady*, 788 N.E.2d at 920 (explaining that the insurer did not have a duty to act in good faith during the course of its negotiations with an accident victim receiving a payout from the policy). This is because the injured party was not an intended beneficiary and was not in privity of contract with the insurer. Indiana has rejected direct actions by the injured party against the insurer without first obtaining judgment against the tortfeasor. *Donald*, 18 F.3d at 480.

There are, of course, exceptions to the prohibition against tort actions brought by an injured third-party against a liabil-

ity carrier. An injured party may proceed against a liability carrier in contract or tort if the carrier refuses to honor its contract after the injured party obtains a judgment against the tortfeasor. *Donald*, 18 F.3d at 480. Similarly, a judgment creditor may proceed against a liability carrier when the insured has assigned the claim and refuses to bring suit. *Cromer v. Sefton*, 471 N.E.2d 700, 703 (Ind. App. 1984). Finally, Indiana recognizes that insurers owe a duty of good faith to third-party beneficiaries of insurance contracts. *Donald*, 18 F.3d at 480; *Lakeshore Bank and Trust Co. v. United Farm Bureau Mutual Insurance Co.*, 474 N.E.2d 1024, 1026 (Feb. 21, 1985) ("Once the insurer has notice of the mortgagee's rights it is considered to have a duty to treat the proceeds of the policy as though the provision that the proceeds should be payable to the mortgagee were written into the policy."). "A third party beneficiary contract requires first, that the intent to benefit the third party be clear, second, that the contract impose a duty on one of the contracting parties in favor of the third party, and third, that the performance of the terms necessarily render to the third party a direct benefit intended by the parties to the contract." *Donald*, 18 F.3d at 481. When these criteria are met, the third-party beneficiary may proceed directly on a claim for bad faith against the insurer.

Centier has not obtained a judgment against Chuhar and is not a judgment creditor. However, Centier was named in the insurance policy as mortgagee, loss payee, and an additional insured, and it was intended to benefit from the insurance policy. Because Centier was an intended beneficiary named in the contract, the defendants owed Centier a duty of good faith to negotiate the claim. Although Centier may have been a beneficiary of the policy, having rights thereunder, and may have been able to pursue its own claim for bad faith, the statute of limitations for Centier to proceed on its own claim of bad faith has expired. However, this does not address whether Chuhar assigned Centier his claim for bad faith, which was timely filed.

Indiana prohibits assignment of tort claims arising from a personal injury. ***Allstate Insurace Co. v. Axsom***, 696 N.E.2d 482, 485 (Ind. App. 1998). This includes wrongs done to the person, reputation, or feelings of the injured party. When considering whether a tort claim may be assigned, the court looks to the underlying cause of the actual damages the person suffered. When the damages arise from an injury to personal property, not the person, the tort claim may be assigned. Under these circumstances, the "third-party cannot recover damages personally suffered by the insured such as pain and suffering, embarrassment, mental anguish and humiliation. The assignee can only

recover the insured's pecuniary losses." *Allstate,* 696 N.E.2d at 485.

Applying these principles, the court in *Allstate* allowed the insured to assign his bad faith claim against his insurer to a third-party. *Allstate,* 696 N.E.2d at 484 ("In some circumstances a claim for an insurer's bad faith failure to settle also may be assigned."). The court explained that because the third-party had an interest in the property, his claim was "in reality the insured's claim". *Allstate,* 696 N.E.2d at 485. The court proceeded to limit the assignee's recovery to the insured's pecuniary losses, stating "[i]f the excess judgment and resulting injury to [the plaintiff's] property is the consequence of oppressive, i.e. tortious, conduct by Allstate, then punitive damages, the remedy for such conduct, should also be assignable." *Allstate,* 696 N.E.2d at 485. "In short the effect of the assignment is to relieve the insurance company of the liability for damages of a personal nature suffered by its insured, but still make it responsible for the pecuniary and punitive damages caused by its wrongful conduct. . . . Thus, allowing an assignment of punitive damages would force insurance companies to deal in good faith with their insureds as opposed to unreasonably exposing them to personal liability if a jury were to return a verdict in

9

excess of policy limits." *Allstate,* 696 N.E.2d at 485 (citations omitted).

*Allstate* made clear that bad faith claims against an insurer can be assigned to third parties provided the claim arises from property damage as opposed to personal injury. Chuhar's claim arose from the defendants' failure to settle his claim for property damage to the motel and was assignable. Under this standard, Centier could have been assigned the claim, but it would be limited to recovering the amount of Chuhar's pecuniary losses. However, the defendants argue that the record is ambiguous on whether Chuhar intended to assign his claim for bad faith because Chuhar did not make an express or written assignment of the claim. Instead, he abandoned his claim and turned prosecution over to Centier. The defendants contend that Chuhar's actions were insufficient to constitute an assignment of his claim for bad faith and that assignment would violate the provision of the policy prohibiting assignment without the defendants' consent.

Rule 25(c) grants the court authority to substitute a party when the interest in the underlying property has been transferred. Although the filing party may continue to pursue the claim, it is within the court's discretion to allow substitution or joinder of the party holding the transferred interest if the court believes the transferee's presence will facilitate litiga-

10

tion. 7C *Federal Practice and Procedure* §1958. Other jurisdictions have recognized that abandonment of a claim in favor of a creditor or a statutory provision transferring all assets constitutes a transfer under Rule 25(c). **Pacamor**, 892 F.Supp. at 359; **Negron-Almeda v. Santiago**, 579 F.3d 45, 53 (1st Cir. 2009). Rule 25 does not set forth any formal requirements for effectuating an assignment. Rather, by its express terms, a transfer of interest in the underlying property is all that is required to invoke the court's exercise of discretion to allow substitution. *See* Rule 25.

At the time the proceedings began, Chuhar retained an interest in the motel. Pursuant to the loan agreement, Centier foreclosed on the motel, and any interest Chuhar had was given up in favor of Centier. Because Rule 25 does not demand a formal written assignment of the claim, the transfer of property was enough to satisfy the requirements set forth by Rule 25. However, the insurance policy imposed a heightened standard, demanding written consent of assignment by the defendants.

The terms of the loan agreement and insurance policy gave Centier an interest in both the property and insurance proceeds. Although the documents did not expressly assign any bad faith claims arising from failure to settle, the right is implied from assignment of the property damage claim. It naturally follows

11

that if the loan documents and insurance policy created a right in the property, a proposition the defendants do not oppose, it also created an interest in settling the claim. The failure to settle affects the value of and Centier's interest in the property and is a necessary enforcement mechanism to protect the property's value.

It would be illogical to conclude that Centier received a transferred interest in the property but could not recover for the loss of value caused by the defendants' failure to settle. By issuing the insurance policy to Chuhar and acknowledging Centier's interest therein, the defendants consented to the assignment. Moreover, Chuhar initially sought relief for the damage to his interest in the property, which later was transferred to Centier. The defendants have not shown why Centier should be denied full value of the transferred interest. Pursuant to the transfer of interest and assignment, Centier is taking over Chuhar's claim and should be permitted to obtain relief of the full value of the property, including the loss caused from failure to settle. See *Allstate*, 696 N.E.2d at 485 (explaining that the assignee's claim is in reality the insured's claim). It is, therefore, within the court's discretion to allow substitution of Centier on this claim.

The defendants counter that it would be an abuse of discretion to compel involuntary substitution. *See* ***State Farm Mutual Automobile Insurance v. Estep***, 873 N.E.2d 1021, 1027 (Ind. 2007) (holding that the court cannot involuntarily assign a claim for bad faith). In ***Estep***, it was determined that the trial court could not force involuntary assignment of a bad faith claim. Forcing assignment would circumvent the direct action rule and allow third-parties to proceed directly against the insured. The concern arose because the insured did not believe the insurer acted in bad faith during negotiations and declined to pursue its own suit. ***Estep***, 873 N.E.2d at 1027 ("[I]nvoluntary assignment of claims against carriers whose insureds do not believe they have been wronged by their insurance companies was inconsistent with the direct action rule."). The court explained that permitting involuntary assignments could lead to multiple litigation, change the dynamics of settlement negotiations, and increase the risk and cost borne by the insureds who never make a claim and found the insurer's service satisfactory. ***Estep***, 873 N.E.2d at 1027.

Here, the pertinent facts do not pose the same threats. Chuhar claimed the defendants acted in bad faith, as is evident by his pursuit of the claim, extinguishing the fear that the direct action rule would be circumvented by assignment. More-

over, Chuhar did not involuntarily assign his claim. Chuhar voluntarily entered the loan agreement and insurance policy which gave Centier a right to the property and the insurance policy proceeds. Pursuant to the loan agreement, Centier initiated foreclosure proceedings, dissolving Chuhar of any interest in the property. Because Chuhar no longer has an interest in the property, there is no risk of multiple litigation, change in the dynamics of settlement negotiations, or cost. Finding the assignment voluntary and that the risk of involuntary assignment does not threaten the present litigation, the court finds that it would not be an abuse of discretion to allow substitution.

The bad faith claim, whether it is pursued by Chuhar or Centier, arose from the same conduct. *See **Allstate**, 696 N.E.2d at 485 (explaining that the assignee's claim is in reality the insured's claim). The defendants have not argued that they would be injured or prejudiced by allowing substitution of Centier for Chuhar, and it does not appear that additional discovery would have to be conducted. Finding no reason to deny Centier's request, the court **GRANTS** Centier's motion to be substituted as the plaintiff for Chuhar's claim for bad faith for failure to settle the claim for property damage.

Centier also argues that it should be substituted as the plaintiff for Chuhar's breach of contract under the loss of

business revenue provision of the insurance policy and bad faith for failing to settle this claim. However, this argument is more attenuated. The insurance policy stated that Chuhar's rights and duties could not be transferred without the defendants' written consent except in the event of death. (*See* Defts. Br. Ex. 4) Neither the loan documents nor the insurance policy gave Centier any right to Chuhar's business revenue. Absent some indication of the defendants' consent, the court cannot find contrary to the insurance policy and hold that the claim was assigned to Centier.

The court determined that Centier's interest in the bad faith claim arising from the breach of the property damage provision was derivative of the assignment of the claim for breach of the respective provision. However, Centier was not similarly assigned an interest in the loss of business revenue policy provision. Absent assignment and consent by the defendants, the court cannot find that the claim for bad faith arising from failure to negotiate the loss of business revenue claim was impliedly assigned. For these reasons, Centier cannot be substituted as the plaintiff for Chuhar's breach of the policy provision covering loss of business revenue or any bad faith claims arising thereunder. Centier's motion is **DENIED** with respect to these claims.

Finally, Centier moves to be substituted as the plaintiff for Chuhar's claim for breach of the property damage policy. "Where a positive duty is imposed upon the mortgagor to insure for the benefit of the mortgagee, the mere existence of the duty is sufficient to impress upon the proceeds of any policy taken out by the mortgagor an equitable lien in favor of the mortgagee." *Lakeshore Bank*, 474 N.E.2d at 1026. Once the insurer is aware of the mortgagee's rights, the insurer has a "duty to treat the proceeds of the policy as though the provision that the proceeds should be payable to the mortgagee were written into the policy." *Lakeshore Bank*, 474 N.E.2d at 1026.

The insurance policy Chuhar procured with the defendants acknowledged that Centier was a mortgagee, loss payee, and additional insured. Pursuant to these terms, Centier was entitled to recover from the insurer the amount due on its security agreement in the event that physical damage destroyed the motel. By entering the agreement, the defendants acknowledged the relationship between Centier and Chuhar and its duty to treat the proceeds of the policy as payable to Centier. Rule 25 does not enforce formal requirements for substituting a party. Rather, the only imposition is that the party to be substituted has a transferred interest in the property at issue. Pursuant to the foreclosure proceedings, all interest in the motel was trans-

ferred to Centier. It is, therefore, within the court's discretion to allow substitution of Centier as the plaintiff.

The only argument the defendants raise in opposition to substituting Centier for Chuhar on this claim is that the 18 month delay in moving for such relief is unjustified. However, Rule 25(c) does not impose a time limit on moving for substitution. 7C *Federal Practice and Procedure* §1958. The defendants have not demonstrated that permitting substitution would impose a greater burden or create undue hardship. Whether Chuhar or Centier proceeds with the claim, the surrounding facts and necessary discovery are identical. Finding no reasons to prevent just resolution of this matter, the court, within its discretion, **GRANTS** Centier's request to be substituted as the plaintiff for the breach of property damage policy.

_____

Based on the foregoing, the Motion to Substitute Itself as Party Plaintiff [DE 34], filed by non-party Centier Bank on September 29, 2011, is **GRANTED IN PART** and **DENIED IN PART**. Centier may be substituted as the plaintiff for the claim for breach of the property damage policy provision and the claim for bad faith arising thereunder, but may not pursue Chuhar's claim for breach of the policy provision covering lost business revenue

and any claim for bad faith arising from the defendants' failure to settle this claim.

ENTERED this 22nd day of February, 2012

                                              s/ ANDREW P. RODOVICH
                                                United States Magistrate Judge